Mark L. Javitch (California SBN 323729)
Javitch Law Office
3 East 3rd Ave., Ste. 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 300-0343
mark@javitchlawoffice.com
*Attorney for Plaintiff Emily Sutton and the Putative Class*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **EMILY SUTTON, individually, and on behalf of all similarly situated,** | § § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § § | **Case No. 3:26-cv-01884** |
| **DV INJURY LAW, PLLC; HAH, LLP; and HEILBRUN LAW, LLP,** | § § § | |
| **Defendants.** | § § § § § | |

**PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

Plaintiff Emily Sutton ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned counsel, files this Original Class Action Complaint against Defendants DV Injury Law, PLLC, HAH, LLP, and Heilbrun Law, LLP, and alleges as follows.

**I. NATURE OF THE ACTION**

1. This case concerns an unsolicited, AI-generated telemarketing call placed to Plaintiff's cellular telephone by or on behalf of Defendants — three affiliated law firms that operate a common mass-tort client-solicitation enterprise. The call used an artificial voice that interrogated Plaintiff about supposed injuries to her and her family, and — after Plaintiff repeatedly answered

Original Class Action Complaint                    1                    Case No. 3:26-cv-01884

that none of it pertained to her — continued to solicit her to retain Defendants' legal services. The caller never identified Defendants on the caller identification display, and Plaintiff never consented to the call or requested anything from Defendants.

2. Plaintiff's call was not an isolated event. To feed their high-volume mass-tort practice, Defendants deploy an automated, artificial-voice calling platform to solicit prospective clients en masse, placing materially identical artificial-voice calls to thousands of cellular telephone numbers without the prior express consent of the persons called. Plaintiff brings this action on behalf of herself and classes of similarly situated persons who received such calls.

3. That single call independently violated four distinct bodies of law: (a) the Telephone Consumer Protection Act, 47 U.S.C. § 227(b), which prohibits artificial-voice calls to cellular numbers without prior express consent; (b) the Texas mini-TCPA, Tex. Bus. & Com. Code § 305.053; (c) the Texas telephone-solicitor registration statute, Tex. Bus. & Com. Code § 302.101; and (d) Texas's anti-barratry statute, Tex. Gov't Code § 82.0651, which makes the unlawful telephone solicitation of legal employment civilly actionable and, for actions filed on or after September 1, 2025, carries a $50,000 statutory penalty recoverable from each person who engaged in the barratry.

4. Plaintiff brings all four claims on a classwide basis to recover statutory damages, the barratry penalty, and injunctive relief for herself and the Classes, and asserts the barratry claim individually in the alternative.

## II. JURISDICTION AND VENUE

5. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Count I arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012).

6. This Court independently has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the proposed class exceeds 100 members, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and at least one member of the proposed class is a citizen of a State different from at least one Defendant: Plaintiff is a citizen of Texas, and each Defendant is a citizen of Michigan.

7. This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a) because those claims arise from the same case or controversy — the same telephone solicitation campaign, and as to Plaintiff the same telephone call — as Plaintiff's federal claim.

8. This Court has personal jurisdiction over each Defendant because Defendants, directly and through their agent, purposefully directed the telephone call at issue into the State of Texas, to a Texas resident located in this District, and because Defendants operate as a common enterprise whose Texas-directed conduct is attributable to each of them. Plaintiff's claims arise directly out of that Texas-directed conduct.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred here: Plaintiff received the offending call in El Paso County, Texas, which lies within the El Paso Division of the Western District of Texas.

### III. PARTIES

10. Plaintiff Emily Sutton is a natural person and a resident of El Paso County, Texas.

11. At all relevant times, Plaintiff was the subscriber to, and customary user of, the cellular telephone number (915) 703-7893 (the "Cellular Number").

12. Defendant DV Injury Law, PLLC ("DV") is a professional limited liability company with its principal place of business at 30095 Northwestern Highway, Suite 80A, Farmington

Hills, Michigan 48334. DV holds itself out to the public as a law firm that solicits and represents claimants in mass-tort and personal-injury matters, including matters advertised on its website at dvinjurylaw.com.

13. Defendant Heilbrun Law, LLP ("Heilbrun Law") is a limited liability partnership that, on information and belief, maintains its principal place of business at the same Farmington Hills, Michigan location and shares common principals, management, and operations with DV.

14. Defendant HAH, LLP ("HAH") is a limited liability partnership that, on information and belief, maintains its principal place of business at the same Farmington Hills, Michigan location and shares common principals, management, and operations with DV and Heilbrun Law.

15. DV, Heilbrun Law, and HAH are referred to collectively as "Defendants" or "the Firms."

## IV. AGENCY AND COMMON ENTERPRISE

16. Defendants hold themselves out to the public as a single, integrated enterprise. The privacy policy published on the dvinjurylaw.com website states that it applies to "DV Injury Law, PLLC, HAH, LLP, and Heilbrun Law, LLP," which it refers to collectively as "the Firms," "we," "us," and "our."

17. Defendants share common business infrastructure, including a single contact email address (Office@nwccservices.com), a single business address in Farmington Hills, Michigan, and common telephone numbers.

18. On information and belief, Defendants share common ownership, principals, and management, and are controlled by the same individuals, including Daniel Heilbrun.

19. Defendants jointly operate and market a mass-tort legal practice concerning allegedly defective products and harmful drugs through the dvinjurylaw.com website and their shared operations, and they solicit prospective clients for that joint practice.

20. The Call, and the telephone solicitation campaign of which it was a part, were placed by Defendants, or by a third-party telemarketing vendor acting as Defendants' agent, on Defendants' behalf, at Defendants' direction, and for Defendants' benefit.

21. Defendants authorized and directed the telephone solicitation campaign of which the Call was a part, and controlled the manner and means of that campaign, including the configuration of the artificial-voice system — what it said, how it responded to called persons, and how it continued to solicit them — as alleged herein on information and belief.

22. The caller identified itself as "DV Injury Law PLLC" and provided Defendants' own published Michigan business address. Those manifestations, traceable to Defendants, would lead a reasonable person in Plaintiff's position to believe that the caller acted with Defendants' authority.

23. Defendants knew of the Call and the calling campaign, accepted and retained their benefits, including prospective-client leads generated for their joint practice, and have not disavowed the conduct, thereby ratifying it.

24. Defendants operate as a joint enterprise: they have an agreement among themselves, a common purpose of soliciting and monetizing mass-tort clients, a community of pecuniary interest in that purpose, and an equal right of control over the enterprise and its telephone solicitation.

25. By reason of the foregoing, the acts of any Defendant or its agent in connection with the Call and the calling campaign are attributable to each Defendant; Defendants are jointly and

Original Class Action Complaint                    5                    Case No. 3:26-cv-01884

severally liable for those acts; and each Defendant is a person who solicited Plaintiff and the Classes and engaged in the conduct alleged.

## V. FACTUAL ALLEGATIONS

### A. The Call to Plaintiff

26. On or about February 5, 2026, Plaintiff received a telephone call on the Cellular Number (the "Call").

27. The Call was placed from, or displayed on Plaintiff's caller identification as originating from, the telephone number (817) 330-2564. That number is not associated with any Defendant and does not identify any Defendant.

28. The Cellular Number is assigned to a cellular telephone service. Plaintiff is charged for calls to that number.

29. When Plaintiff answered the Call, she was not greeted by a live human being. Instead, the Call used an artificial, AI-generated voice (the "AI Voice").

30. The AI Voice began asking Plaintiff a series of questions concerning potential injuries.

31. Plaintiff responded, more than once, that the subject matter did not pertain to her.

32. The AI Voice nonetheless continued, asking further questions about other injuries Plaintiff or members of her family might have suffered.

33. Plaintiff again repeatedly declined and answered "no."

34. Despite Plaintiff's repeated declinations, the AI Voice continued to solicit Plaintiff to obtain legal services.

35. When Plaintiff asked the AI Voice who was calling, it identified the caller as "DV Injury Law PLLC."

36. When Plaintiff asked for an address, the AI Voice provided the Michigan address that Defendants publish on their website.

37. The purpose of the Call was to solicit Plaintiff to engage Defendants to provide legal representation, and thereby to obtain an economic benefit for Defendants.

38. The Call was placed by Defendants, or by a third party acting on Defendants' behalf, at Defendants' direction, and for Defendants' benefit, using an automated, artificial-voice calling platform that Defendants own, control, or direct.

39. Plaintiff never provided prior express consent — or any consent — to receive the Call or any telemarketing call from Defendants.

40. Plaintiff has no prior or existing business relationship with any Defendant. Plaintiff never requested legal services, information, or a callback from any Defendant, and never submitted her contact information to any Defendant.

41. Upon information and belief, no Defendant is, or at the time of the Call was, registered with the Texas Secretary of State as required of telephone solicitors under Tex. Bus. & Com. Code Chapter 302.

42. The Call was made knowingly and willfully. The AI Voice continued to solicit Plaintiff after she expressly and repeatedly declined, and the caller identification transmitted with the Call concealed Defendants' identity — both reflecting a deliberate solicitation campaign rather than an inadvertent contact.

**B. Defendants' Mass Artificial-Voice Solicitation Campaign**

43. Defendants operate a high-volume, nationally marketed mass-tort intake practice. Through the dvinjurylaw.com website, Defendants advertise for prospective clients across numerous mass-tort categories, including Suboxone, PFAS, Ozempic, CPAP, AFFF, Zantac,

Port-a-Cath, hair relaxer, talcum powder, Roundup, Camp Lejeune, hernia mesh, Depo Provera, and OxBryta litigation.

44. A practice of this scale depends on soliciting prospective clients in large volume. On information and belief, Defendants use an automated, artificial-voice calling platform to place solicitation calls to prospective mass-tort clients at scale.

45. On information and belief, the artificial-voice platform that placed the Call was configured to run a standardized solicitation script that it delivered to each person called, using the same or materially similar artificial voice, asking the same or materially similar questions about potential injuries, and continuing to solicit the called person notwithstanding declinations — the same script and conduct experienced by Plaintiff.

46. On information and belief, Defendants and their agents placed such artificial-voice calls to thousands of cellular telephone numbers within the four years preceding the filing of this Complaint.

47. On information and belief, Defendants placed these calls from lead lists and dialing records without verifying that the persons called had given prior express consent and without verifying that the telephone numbers called remained assigned to any person who had requested contact, causing Defendants to place artificial-voice solicitation calls to numerous persons — including persons, like Plaintiff, who never consented and whose numbers had been reassigned from a prior subscriber.

48. The harms Plaintiff suffered from the Call — invasion of privacy, intrusion upon seclusion, nuisance, wasted time, and the occupation of her cellular telephone and its resources — are the same harms suffered by every other person who received Defendants' artificial-voice solicitation calls.

## VI. CLASS ACTION ALLEGATIONS

49. Plaintiff brings Counts I, II, III, and IV on behalf of herself and the following classes under Federal Rule of Civil Procedure 23(b)(2), 23(b)(3), and, in the alternative, 23(c)(4):

**Artificial Voice Class (Count I)**: All persons in the United States who, within four years before the filing of this Complaint through the date of class certification, received a telephone call on a cellular telephone number placed by or on behalf of Defendants that used an artificial or prerecorded voice, and for whom Defendants have no record of prior express consent to place the call.

**Texas Subclass (Counts II and III)**: All members of the Artificial Voice Class who were located in Texas or were assigned a Texas telephone number at the time of the call.

**Texas Barratry Subclass (Count IV)**: All persons who, within four years before the filing of this Complaint through the date of class certification, received a telephone call placed by or on behalf of Defendants that solicited the person to obtain legal services from Defendants, while the person was located in Texas or was assigned a Texas telephone number, and who did not enter into a contract for legal services with any Defendant as a result of that call.

50. Excluded from the Classes are: Defendants and their officers, directors, members, partners, employees, and agents; any entity in which any Defendant has a controlling interest; Defendants' counsel of record; the judge to whom this case is assigned and the judge's immediate family and staff; and all persons who have previously released their claims against Defendants.

51. Plaintiff reserves the right to modify, amend, or refine the class definitions, including through the addition of subclasses, based on discovery.

52. **Numerosity (Fed. R. Civ. P. 23(a)(1)).** The members of the Classes are so numerous that joinder of all members is impracticable. On information and belief, because Defendants used an automated artificial-voice platform to solicit prospective mass-tort clients across numerous litigation categories, the Classes number in the thousands. The precise number and identities of class members are presently unknown to Plaintiff but are ascertainable from Defendants' and their vendors' calling records, dialing lists, and related business records.

53. **Commonality (Fed. R. Civ. P. 23(a)(2)).** Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members. These common questions include: (a) whether the AI Voice used to place the calls is an "artificial or prerecorded voice" within the meaning of 47 U.S.C. § 227(b); (b) whether Defendants placed, or caused to be placed on their behalf, artificial-voice calls to cellular telephone numbers; (c) whether Defendants had prior express consent to place the calls; (d) whether Defendants are liable for the calls directly, as a common enterprise, and vicariously under agency principles; (e) whether Defendants' violations were willful or knowing; (f) as to the Texas Subclass, whether the calls violated 47 U.S.C. § 227 so as to be actionable under Tex. Bus. & Com. Code § 305.053, and whether Defendants made telephone solicitations to Texas purchasers without the registration required by Tex. Bus. & Com. Code § 302.101; (g) as to the Texas Barratry Subclass, whether the calls solicited legal employment for Defendants, with intent to obtain an economic benefit, in violation of Tex. Penal Code § 38.12(a), and whether each Defendant engaged in, authorized, directed, or ratified that solicitation; and (h) the relief to which Plaintiff and the Classes are entitled.

54. **Typicality (Fed. R. Civ. P. 23(a)(3)).** Plaintiff's claims are typical of the claims of the members of the Classes. Plaintiff and every class member received an artificial-voice solicitation call placed by or on behalf of Defendants, without prior express consent, from the same automated calling campaign; their claims arise from the same course of conduct and are based on the same legal theories.

55. **Adequacy (Fed. R. Civ. P. 23(a)(4)).** Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has no interests antagonistic to those of the Classes, and she has retained counsel experienced in complex and class-action litigation under the Telephone

Consumer Protection Act, who has been appointed class counsel in other actions and who will vigorously prosecute this action on behalf of the Classes.

56. **Predominance and Superiority (Fed. R. Civ. P. 23(b)(3)).** The common questions identified above predominate over any individual questions, because the calls were placed through a common automated platform running a standardized script, and liability turns on Defendants' uniform conduct rather than on individualized proof. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The statutory damages available to each class member are modest relative to the burden and expense of individual litigation, most class members are unaware that their rights were violated, and individual litigation would risk inconsistent results and burden the courts. There are no unusual difficulties in managing this action as a class action, and Defendants' calling records will permit the classes to be identified and members to be notified. As to the Texas Barratry Subclass in particular, liability turns on the common, standardized solicitation of legal employment and does not depend on individualized proof of the calling technology used or of any called person's consent; the sole member-specific fact — whether a person entered into a contract with Defendants — is defined into the subclass and is determinable from Defendants' own records.

57. **Injunctive Relief (Fed. R. Civ. P. 23(b)(2)).** Defendants have acted on grounds generally applicable to the Classes by uniformly subjecting them to the same automated artificial-voice solicitation campaign, making final injunctive relief and corresponding declaratory relief appropriate respecting the Classes as a whole.

58. **Issue Certification (Fed. R. Civ. P. 23(c)(4)).** In the alternative, Plaintiff seeks certification of particular common issues, including the issues of whether the AI Voice is an

artificial or prerecorded voice, whether Defendants placed or are responsible for the calls, and whether Defendants' conduct was willful or knowing.

## VII. CAUSES OF ACTION

### COUNT I
### Violation of the Telephone Consumer Protection Act
### 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and the Artificial Voice Class)

59. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

60. The Telephone Consumer Protection Act prohibits any person from making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using . . . an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

61. An AI-generated or AI-cloned voice is an "artificial voice" within the meaning of § 227(b). See *In re Implications of Artificial Intelligence Technologies on Protecting Consumers from Unwanted Robocalls & Robotexts*, CG Docket No. 23-362, Declaratory Ruling, FCC 24-17, 39 FCC Rcd 1783 (rel. Feb. 8, 2024).

62. Defendants made, or caused to be made on their behalf, the Call to the Cellular Number, and materially identical artificial-voice calls to the cellular telephone numbers of the members of the Artificial Voice Class, using an artificial voice.

63. The cellular telephone numbers called were assigned to cellular telephone service.

64. Neither Plaintiff nor the members of the Artificial Voice Class gave prior express consent to receive the calls, and the calls were not made for emergency purposes.

65. Each Defendant is liable for the calls directly, as a member of the common enterprise on whose behalf the calls were placed, and vicariously under federal common-law agency

principles, because the calls were placed with Defendants' actual or apparent authority and Defendants directed, controlled, ratified, and benefited from them, as alleged above.

66. Plaintiff and each member of the Artificial Voice Class are entitled to recover the greater of actual monetary loss or $500 in statutory damages for each violation under 47 U.S.C. § 227(b)(3)(B).

67. Because Defendants' violations were willful and knowing, the Court should treble the award to $1,500 per violation under 47 U.S.C. § 227(b)(3).

68. Plaintiff and the Artificial Voice Class are further entitled to an injunction restraining Defendants from further violations under 47 U.S.C. § 227(b)(3)(A).

## COUNT II
### Violation of the Texas Mini-TCPA
### Tex. Bus. & Com. Code § 305.053
### (On Behalf of Plaintiff and the Texas Subclass)

69. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

70. Section 305.053 of the Texas Business and Commerce Code provides that a person who receives a communication that violates 47 U.S.C. § 227, or a regulation adopted under that provision, may bring an action against the person who originates the communication for an injunction, damages, or both. Tex. Bus. & Com. Code § 305.053(a).

71. As alleged in Count I, the calls violated 47 U.S.C. § 227(b). Plaintiff and the members of the Texas Subclass received those communications, and Defendants originated them.

72. Plaintiff and each member of the Texas Subclass are entitled to recover the greater of $500 or actual damages for each violation. Tex. Bus. & Com. Code § 305.053(b).

73. Because Defendants committed the violations knowingly and intentionally, the Court may increase the award to the greater of $1,500 or three times actual damages for each violation. Tex. Bus. & Com. Code § 305.053(c).

**COUNT III**
**Violation of the Texas Telephone Solicitor Registration Statute**
**Tex. Bus. & Com. Code § 302.101**
**(On Behalf of Plaintiff and the Texas Subclass)**

74. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

75. Tex. Bus. & Com. Code § 302.101 prohibits a telephone solicitor from making a telephone solicitation from a location in Texas, or to a purchaser located in Texas, unless the solicitor holds a registration certificate issued by the Texas Secretary of State.

76. Defendants made telephone solicitations to Plaintiff and the members of the Texas Subclass, purchasers located in Texas, when they placed the calls for the purpose of soliciting them to engage and pay for Defendants' legal services. Under Tex. Bus. & Com. Code § 302.002, a person makes a telephone solicitation, for purposes of Chapter 302, by effecting or attempting to effect a solicitation initiated by an automatic dialing machine or a recorded message device, as Defendants did here.

77. Upon information and belief, no Defendant held the registration certificate required by § 302.101 at the time of the calls.

78. Defendants' violations of § 302.101 subject Defendants to a civil penalty of not more than $5,000 for each violation under Tex. Bus. & Com. Code § 302.302(a), and entitle Plaintiff and the Texas Subclass to recover all reasonable costs of prosecuting the action, including court costs and attorney's fees, under § 302.302(d). In addition, under Tex. Bus. & Com. Code § 302.303, Defendants' violations are false, misleading, or deceptive acts or practices actionable through the private remedies of Subchapter E of Chapter 17 of the Texas Business and

Commerce Code (the Deceptive Trade Practices–Consumer Protection Act), entitling Plaintiff

and the Texas Subclass to economic damages, trebled for Defendants' knowing conduct, and

reasonable and necessary attorney's fees and costs under Tex. Bus. & Com. Code § 17.50.

**COUNT IV**
**Civil Liability for Prohibited Barratry**
**Tex. Gov't Code § 82.0651**
**(On Behalf of Plaintiff and the Texas Barratry Subclass)**

79. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

80. Under Tex. Penal Code § 38.12(a), a person commits an offense if, with intent to

obtain an economic benefit, the person solicits employment, either in person or by telephone, for

himself or for another.

81. Through the calls, Defendants, directly and through their agent, solicited Plaintiff and

the members of the Texas Barratry Subclass by telephone to obtain legal employment for

Defendants, with the intent to obtain an economic benefit, in violation of Tex. Penal Code §

38.12(a). As to Plaintiff, the AI Voice's continued solicitation after she repeatedly declined

confirms that the conduct was solicitation of legal employment directed at her. Each Defendant

engaged in, authorized, directed, or ratified that solicitation and is therefore a person who

engaged in barratry.

82. Plaintiff and each member of the Texas Barratry Subclass were solicited by conduct

violating Tex. Penal Code § 38.12(a) but did not enter into a contract for legal services with any

Defendant as a result of that conduct.

83. Under Tex. Gov't Code § 82.0651(c) and (d), a person solicited by such conduct who

did not enter into a contract may file a civil action against any person who committed barratry

and, upon prevailing, shall recover from each person who engaged in barratry: (1) a penalty in

the amount of $50,000; (2) actual damages caused by the prohibited conduct; and (3) reasonable and necessary attorney's fees.

84. Because this action is filed on or after September 1, 2025, the $50,000 penalty established by the 2025 amendment to § 82.0651(d) applies, and Plaintiff and each member of the Texas Barratry Subclass are entitled to recover that penalty from each Defendant that engaged in the barratry, together with actual damages and reasonable and necessary attorney's fees.

85. In the alternative, to the extent the Court does not certify the Texas Barratry Subclass, Plaintiff asserts this Count individually and seeks the penalty under Tex. Gov't Code § 82.0651(d), actual damages, and reasonable and necessary attorney's fees for herself.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Emily Sutton, individually and on behalf of the Classes, respectfully requests that the Court enter judgment in her favor and against Defendants DV Injury Law, PLLC, HAH, LLP, and Heilbrun Law, LLP, jointly and severally except where otherwise specified, and award the following relief:

A. An order certifying the Artificial Voice Class and the Texas Subclass under Federal Rule of Civil Procedure 23, appointing Plaintiff as class representative, and appointing the undersigned as class counsel;

B. On Count I, on behalf of Plaintiff and the Artificial Voice Class, statutory damages of $500 per violation, trebled to $1,500 per violation for Defendants' willful and knowing violations, under 47 U.S.C. § 227(b)(3), against Defendants jointly and severally, and a permanent injunction restraining Defendants from further violations of 47 U.S.C. § 227(b);

C. On Count II, on behalf of Plaintiff and the Texas Subclass, statutory damages of $500 per violation, increased to $1,500 per violation for Defendants' knowing and intentional violations, under Tex. Bus. & Com. Code § 305.053, against Defendants jointly and severally;

D. On Count III, on behalf of Plaintiff and the Texas Subclass, a civil penalty of up to $5,000 per violation under Tex. Bus. & Com. Code § 302.302(a); economic damages trebled for Defendants' knowing conduct under Tex. Bus. & Com. Code §§ 302.303 and 17.50; and reasonable and necessary attorney's fees and costs under Tex. Bus. & Com. Code §§ 302.302(d) and 17.50, against Defendants jointly and severally;

E. On Count IV, on behalf of Plaintiff and the Texas Barratry Subclass, a penalty in the amount of $50,000 for each member against each Defendant that engaged in barratry, actual damages, and reasonable and necessary attorney's fees, under Tex. Gov't Code § 82.0651(d); or, in the alternative, the same relief for Plaintiff individually;

F. Pre-judgment and post-judgment interest as allowed by law;

G. Costs of suit; and

H. Such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: July 10, 2026

Respectfully submitted,

By: /s/ Mark L. Javitch
Mark L. Javitch (California SBN 323729)
JAVITCH LAW OFFICE
3 East 3rd Ave. Ste. 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 300-0343
mark@javitchlawoffice.com

*Attorney for Plaintiff and the Putative Classes*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 10, 2026, a true and correct copy of the foregoing was served upon the Court and all parties of record via the electronic case management filing system.

<u>/s/ Mark L. Javitch</u>
Mark L. Javitch